IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CV-11-BO

| | |
|---|---|
| CHRISTIE ARRINGTON, as Administratrix of the Estate of Nyles Arrington and CHRISTIE ARRINGTON, individually, <br><br> Plaintiffs, <br><br> v. <br><br> ROSALINDA MARTINEZ, as owner of La Rosa Linda's Mexican Restaurant, MICHELLE PEELE, individually, in her official capacity as an officer of the Raleigh Police Department, and in her capacity as a security guard with La Rosa Linda's Mexican Restuarant, CITY OF RALEIGH, and RALEIGH POLICE DEPARTMENT, <br><br> Defendants. | O R D E R |

This matter is before the Court on Defendant City of Raleigh ("Raleigh") and Defendant Michelle Peele's ("Peele") Motions for Summary Judgment. Raleigh alleges that it properly supervised and trained Peele and that it is not liable under a theory of respondeat superior. Peele argues that her decision to shoot the deceased, Nyles Arrington ("Arrington"), was objectively reasonable, that she is immune from suit because of public officer's immunity, and that Arrington's actions constituted conversion and trespass to chattel. For the reasons stated below, Defendants' Motions for Summary Judgment are GRANTED in part and DENIED in part.

I.  SUMMARY OF THE INSTANT DISPUTE

In the early morning hours of August 28, 2005, Peele shot and killed Arrington. Taking the facts in the light most favorable to the Plaintiffs as the non-moving party, as this Court must,[1] the events leading up to the shooting are as follows:

The events leading up to the shooting began when Arrington drove to La Rosa Linda's Mexican Restuarant ("La Rosa Linda's") in a car, the owner of which is unknown. La Rosa Linda's is a restaurant that also serves as a bar. Arrington parked the car and entered the bar. Peele, who was an officer of the Raleigh Police Department and who was dressed in her full Raleigh Police uniform, was working as a security guard in charge of monitoring the parking lot from 10:00 p.m. to 2:00 a.m. Peele's friend, Lindsay Banning ("Banning"), accompanied Peele to La Rosa Linda's and kept her company while Peele was on duty as a security guard.

At some point after Peele and Banning arrived at La Rosa Linda's, Banning borrowed Peele's 2005 Nissan X-Terra SUV to purchase a soft drink from off the premises. When Banning returned to La Rosa Linda's, she backed Peele's SUV into a spot in the first row of parking, approximately fifty feet from the front door to the bar. At around midnight, Peele and Banning were sitting in Peele's vehicle with the windows rolled down and the radio on when the bouncers exited the bar with a struggling patron. Peele, upset with the way the patron was being treated, exited the vehicle and expressed her displeasure to the bouncers. After the incident, Peele entered La Rosa Linda's and Banning followed, leaving the windows down, the keys in the ignition, and the radio on.

Peele, Banning, and Rosalinda Martinez ("Martinez"), the owner of La Rosa Linda's, were inside of the bar talking when Arrington exited the bar. He walked over to Peele's vehicle,

---

[1]*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

opened the door and entered Peele's SUV. When Peele saw Arrington enter her vehicle, she ran out of the restaurant, drew her weapon, and shouted at him to stop. As Peele got her hand on the driver's side door handle, Arrington began to drive the vehicle forward slowly. Peele's hand slipped from the handle and she fired the fatal shot at Arrington.

There were four eyewitnesses: (1) Arrington; (2) Peele; (3) Banning; and (4) a bouncer at La Rosa Linda's named George Jaime ("Jaime"). Arrington is deceased and the other three witnesses remain. The recount of events diverges with respect to whether Peele or Banning were ever in danger of being struck by the SUV. Banning and Peele claim that Arrington first drove the vehicle towards Peele, then swerved towards Banning, missing her by approximately one foot. Peele claims she shot Arrington because she was concerned for Banning's safety. Jaime claims that Banning was near the building and was not within harm's range when Arrington began to drive slowly away.

Plaintiffs filed the instant action in Wake Superior Court on December 11, 2006, and the Defendants removed it on January 9, 2007, pursuant to 28 U.S.C. § 1441(b). Removal was based on Plaintiffs' 42 U.S.C. § 1983 claim, which claim Plaintiff eliminated in an amended Complaint filed as of right on January 22, 2007. On March 1, 2007, Peele filed a motion for judgment on the pleadings. Plaintiffs dismissed all claims against the Raleigh Police Department by stipulation dated April 10, 2007. On July 9, 2007, Raleigh filed a motion for judgment on the pleadings. On August 6, 2007, both Peele's and Raleigh's motions were granted as to Plaintiff's North Carolina State Constitutional claims, and Raleigh's motion was granted as to Plaintiff's punitive damages claim.

On July 14, 2008, both Raleigh and Peele filed a Motion for Summary Judgment and

-3-

Case 5:07-cv-00011-BO   Document 84   Filed 01/26/09   Page 3 of 14

supporting memorandum. Plaintiffs moved for and were granted an extension of time to file a response in opposition to Defendants' motions for summary judgment up to and including September 3, 2008, but failed to file responses until September 15, 2008. Despite Plaintiffs' untimely filing, Defendants Raleigh and Peele filed replies to Plaintiffs' response on October 23, 2008. The motions were heard before this Court in Raleigh, North Carolina, on December 18, 2008. The matters are now ripe for ruling.

II. DISCUSSION

The first issue this Court must address is whether this Court has jurisdiction despite the elimination of the claim which initially gave rise to jurisdiction. The remaining issues are whether genuine issues of material fact exist regarding whether: (1) Raleigh is immune from suit due to governmental immunity; (2) Raleigh negligently supervised and trained Peele; (3) Raleigh is liable under respondeat superior for Peele's actions; (4) Peele is immune due to public officer's immunity; (5) Peele is liable under a claim for wrongful death for her actions; (6) Plaintiffs are entitled to punitive damages against Peele; (7) the Estate of Arrington is liable for trespass to chattels; and (8) the Estate of Arrington is liable for conversion. Each of these issues is discussed below.

**Jurisdiction**

Though Plaintiffs amended their complaint to eliminate the federal claim over which this Court had original jurisdiction, this Court exercises its discretion to retain jurisdiction over the remaining state law claims. When a district court has original jurisdiction over a claim, it also

has supplemental jurisdiction over "all other claims that are so related to the claims in the action," except in a variety of inapplicable circumstances. 28 U.S.C. § 1367(a). District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

Plaintiff's complaint initially alleged a claim under 42 U.S.C. § 1983, which claim gave this Court original jurisdiction under 28 U.S.C. § 1441(b) and was the basis for Defendants' removal on January 9, 2007. Plaintiffs also alleged a number of state law claims, over which this Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiffs eliminated the § 1983 claim in an amended complaint filed on January 22, 2007, but did not subsequently file a motion to remand. In the two years since the filing of the amended complaint, Plaintiffs and Defendants have submitted numerous, lengthy documents with the Court and neither Plaintiffs nor Defendants have ever objected to this Court's retention of jurisdiction in any of those documents. Therefore, this Court exercises its discretion to retain jurisdiction with respect to the remaining state law claims.

**Summary Judgment - Legal Standard**

A district court should grant summary judgment where there are no genuine issues of material fact for trial. FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the initial burden of establishing the lack of a genuine issue as to any material fact, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex,* 477 U.S. at

324. The court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmoving party, *Matsushita*, 475 U.S. at 587-88, however, conclusory allegations and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

**Summary Judgment - City of Raleigh**

For the reasons stated below, summary judgment is DENIED as to Raleigh's claim that it is immune from suit under governmental immunity, GRANTED as to Plaintiffs' negligent supervision claim, and DENIED as to Plaintiffs' respondeat superior claim.

    **A.    Governmental Immunity**

Raleigh is not immune from suit under the doctrine of governmental immunity because it waived its immunity with the purchase of liability insurance. "Under the doctrine of governmental immunity, a municipality is immune from suit for torts committed by officers or employees while performing a governmental function." *Reid v. Town of Madison*, 137 N.C.App. 168, 170, 527 S.E.2d 87, 89 (2000) (citing *Mullins v. Friend*, 116 N.C.App. 676, 680, 449 S.E.2d 227, 230 (1994)). Police services are considered governmental functions, *Messick v. Catawba County, N.C.*, 110 N.C.App. 707, 714, 431 S.E.2d 489, 493 (1993), as is the training and supervision of officers. *Lyles v. City of Charlotte*, 120 N.C.App. 96, 100, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996).

However, "a municipality may waive governmental immunity by the purchase of liability

insurance." *Davis v. Messer*, 119 N.C.App. 44, 52, 457 S.E.2d 902, 907 (1995). In 2005, Raleigh had coverage for claims between $1,000,000.00[2] and $10,000,000.00. Because Plaintiffs' alleged damages, $2,007,250.00, fall within Raleigh's liability insurance coverage, Raleigh has waived its governmental immunity in this case.

Raleigh raises the issue of whether the alleged damages should be considered separately or totaled when determining whether governmental immunity applies.[3] The case law is clear that a municipality waives immunity to the extent that it is covered by an insurance policy. *See Evans v. Housing Authority of City of Raleigh*, 359 N.C. 50, 58, 602 S.E.2d 668, 673 (2004); *see also Seibold v. City of Kinston*, 268 N.C. 615, 621, 151 S.E.2d 654, 658 (1966) and N.C.G.S. § 160A-485(a). Raleigh's policies state that it is insured against the **total amount** of damages for which Raleigh is held liable. Accordingly, Raleigh has waived its immunity when the total damages fall within the range of covered amounts. Because Plaintiffs have alleged an amount within the range covered by Raleigh's liability insurance, Raleigh has waived its immunity and the motion for summary judgment is DENIED.

### B. Negligent Supervision

Plaintiffs failed to sufficiently allege that Raleigh had notice, either actual or constructive, of Peele's alleged unfitness, and thus failed to present any genuine issues as to whether Raleigh

---

[2] Note that Raleigh has adopted a policy that waives immunity for claims less than $1,000,000.00 under circumstances not applicable here.

[3] Plaintiffs itemized their damages as follows: (1) $504,040 in lost wages; (2) $3,210 in funeral expenses; (3) $500,000 for loss of consortium; and (4) $1,000,000 for pain... continued and suffering. Thus, if the alleged damages are considered independently, some are not within the policy coverage and, arguably, Raleigh has not waived its immunity as to those damages.

-7-

Case 5:07-cv-00011-BO   Document 84   Filed 01/26/09   Page 7 of 14

negligently supervised Peele. In an action for negligent supervision, the law presumes that the employer properly performed his duty, and the burden rests squarely on the plaintiff to prove otherwise. *Braswell v. Braswell*, 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991) (citing *Pleasants v. Barnes*, 221 N.C. 173, 177, 19 S.E.2d 627, 629 (1942)). In order to prevail on a claim for negligent supervision in North Carolina, a plaintiff must prove:

> (1) the specific negligent act on which the action is founded... (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in 'oversight and supervision,'...; and (4) that the injury complained of resulted from the incompetency proved.

*Moricle v. Pilkington*, 120 N.C.App. 383, 386, 462 S.E.2d 531, 533 (1995) (quoting *Medlin v. Bass*, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990)). Because Plaintiffs failed to show the third element, this Court need not address the first, second, and fourth elements. Peele's seven-year history as a police officer did not provide constructive notice to Raleigh of unfitness or bad habits. Peele received 952 hours of training, including biannual training for six years on firearms and the use of deadly force, was rated as an outstanding officer in the three years prior to the incident, was rated a good officer in her first few years on the force, and had never before used deadly force, despite being threatened with a weapon.

Plaintiff argues that Raleigh had actual notice of Peele's "unfitness or bad habits" by naming three people who claim Peele used excessive force in arresting them. One of the named individuals never filed a complaint. The other two individuals filed complaints and, after investigations were conducted, it was determined in both instances that Peel's actions did not constitute excessive force. Unconfirmed allegations of misconduct are not sufficient to

overcome summary judgment. *Medlin v. Bass*, 327 N.C. 587, 592, 398 S.E.2d 460, 463 (1990) (holding that unconfirmed allegations of pedophilia were insufficient to establish that school had notice of defendant's pedophilic tendencies). Thus, because Plaintiffs failed to present sufficient facts to create a genuine issue as to whether Raleigh had notice of Peele's alleged unfitness or bad habits, Raleigh's motion for summary judgment is GRANTED.

### C. Respondeat Superior

Genuine issues remain as to whether Raleigh is liable under respondeat superior because factual disputes surround the reason Peele shot Arrington. An employer is liable under respondeat superior when the employee's act is: (1) expressly authorized; (2) ratified by the employer; or (3) committed within the scope of employment and in furtherance of the employer's business - when the act comes within the employee's implied authority. *Medlin*, 327 N.C. at 592, 398 S.E.2d at 462 (quoting *Snow v. DeButts*, 212 N.C. 120, 122, 193 S.E. 224, 226 (1937)). Plaintiff cannot satisfy the first or second elements because Raleigh's deadly force policy did not authorize Peele's use of force and Raleigh did not ratify Peele's actions: to the contrary, it terminated Peele's employment after the incident. Thus, the only issue is whether Peele's act was committed within the scope of employment and in furtherance of the employer's business within Peele's implied authority.

First, Peele's act was committed within the scope of her employment because she was attempting to arrest an individual in the process of committing a felony. An officer acts within the scope of her employment when she is "engaged in the performance of [her] official duties." *Rose v. City of Rocky Mount*, 180 N.C.App. 392, 399, 637 S.E.2d 251, 256 (2006) (quoting *State*

-9-

Case 5:07-cv-00011-BO    Document 84    Filed 01/26/09    Page 9 of 14

*v. Gaines*, 332 N.C. 451, 477, 421 S.E.2d 569, 577 (1992)). Peele's attempt to stop a felony in progress was the performance of her official duties. Thus, Peele was acting within the scope of her employment.

Second, a genuine issue remains as to whether Peele's actions were in furtherance of the her employer's needs. There are two alternative reasons presented as to why Peele shot Arrington: (1) she shot him because she was concerned about Banning's safety; or (2) she shot him out of personal animosity because he was stealing her SUV. "To be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." *Troxler v. Charter Mandala Center*, 89 N.C.App. 268, 365 S.E.2d 665, *disc. rev. denied*, 322 N.C. 838, 371 S.E.2d 284 (1988).

If Peele shot Arrington out of concern for Banning's safety, regardless of whether that belief and her actions are ultimately deemed unreasonable, Peel was acting in furtherance of Raleigh's business and for the purpose of accomplishing the duties of her employment as an officer. If Peele shot Arrington out of personal animosity because he was stealing her SUV, then Raleigh is not liable for her actions. "If an employee departs from [the employer's] purpose to accomplish a purpose of his own, the [employer] is not liable." *Troxler*, 89 N.C.App. 268, 365 S.E.2d 665. Therefore, because genuine issues remain regarding Peele's reasons for shooting Arrington, Raleigh's motion for summary judgment is DENIED.

**Summary Judgment - Michelle Peele**

For the reasons stated below, summary judgment is DENIED as to Peele's claim that she

is immune under public officer's immunity, DENIED as to Plaintiffs' wrongful death claim, DENIED as to Plaintiffs' claim for punitive damages, DENIED as to Peele's claim for trespass to chattels, and DENIED as to Peele's claim for conversion.[4]

### A. Public Officer's Immunity

Genuine issues exist as to whether Peele is entitled to public officers' immunity because her decision to shoot Arrington may have arisen from malice. "It is settled law in [North Carolina] that a public official, engaged in the performance of his governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Lytle v. Rice*, No. COA08-226, 2008 WL 5061510, at *3 (N.C.App. Dec. 2, 2008) (quoting *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952)). "Police officers are public officials entitled to immunity." *Lytle*, 2008 WL 5061510, at *3 (citing *Shuping v. Barber*, 89 N.C.App. 242, 248, 365 S.E.2d 712, 716 (1988)).

Police officers are not entitled to immunity if their alleged actions were: (1) corrupt; (2) malicious; or (3) outside of and beyond the scope of their duties. *Lytle*, 2008 WL 5061610, at *3 (quoting *Shuping*, 89 N.C.App. 242, 248). Whether Peele's actions were malicious rests on the reason she shot Arrington. If Peele shot Arrington because she was upset that he was driving away in her SUV, as the facts taken in the light most favorable to Plaintiffs indicate, Peele's actions were malicious. Because a genuine issue exists as to whether Peele's actions were malicious, Peele's motion for summary judgment is DENIED.

---

[4]Note that Plaintiffs' claim for violation of the North Carolina constitution was previously disposed of and that Plaintiff did not argue for summary judgment on Plaintiffs' assault and battery claim.

-11-

## B. Wrongful Death

Peele's motion for summary judgment is DENIED because genuine issues exist regarding Banning's location in relation to the SUV when Arrington began to drive away. In order to prevail on a claim for wrongful death pursuant to N.C.G.S. § 28A-18-2(a), a plaintiff must show that the decedent's death was "caused by a wrongful act, neglect or default of another" that would, if the decedent had survived, "have entitled him to an action for damages therefor." N.C.G.S. § 28A-18-2(a). "When attempting a lawful arrest, an officer has the right to use reasonable force to subdue the person arrested and the person arrested has no right to resist." *State v. Anderson*, 40 N.C.App. 318, 321, 253 S.E.2d 48, 50 (1979).

Whether an officer's use of force was reasonable is an objective test, "from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Both parties agree that Peele could have reasonably believed Arrington was committing a felony and that she had the right to arrest Arrington. Thus, the question is whether Peele's use of force was reasonable "in light of the facts and circumstances confronting [her]." *Id* at 397.

Taking the facts in the light most favorable to Plaintiffs, as this Court must, Peele's actions were not reasonable. She shot Arrington as he slowly began to drive the vehicle out of the parking space and away from Peele. Banning remained by the door to La Rosa Linda's, out of harm's way. Thus, there was nothing to trigger a reasonable officer on the scene to use deadly force. Accordingly, because genuine issues of material fact exist, Peele's motion for summary judgment is DENIED.

-12-

## C. Punitive Damages

North Carolina's wrongful death statute allows for punitive damages where the defendant wrongfully caused the death of the decedent "through malice or willful or wanton conduct." N.C.G.S. § 28A-18-2(b)(5). Malice is defined as "a sense of personal ill will towards the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C.G.S. § 1D-5(5). As discussed above, the facts indicate that Peele shot Arrington because she was upset he was stealing her SUV. Thus, a genuine issue exists as to whether Peele wrongfully caused Arrington's death through malice. Accordingly, Plaintiff's motion for summary judgment is DENIED.[5]

## D. Counterclaims for Trespass to Chattels and Conversion

Summary judgment is inappropriate at this time because, as discussed at length above, the facts are contested and in dispute. Accordingly, Peele's Motion for Summary Judgment on her counterclaims for trespass to chattels and conversion is DENIED.

## III. CONCLUSION

This Court exercises its discretion to retain jurisdiction over the state law claims. Summary judgment is: (1) DENIED as to Raleigh's claim that it is immune from suit under governmental immunity; (2) GRANTED as to Plaintiffs' negligent supervision claim against

---

[5] "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C.G.S. § 1D-5(7)... continued genuine issues exist as to whether Peele acted with malice, this Court need not analyze whether her actions constituted willful or wanton conduct.

Raleigh; (3) DENIED as to Plaintiffs' respondeat superior claim against Raleigh; (4) DENIED as to Peele's claim that she is immune under public officer's immunity; (5) DENIED as to Plaintiffs' wrongful death claim against Peele; (6) DENIED as to Plaintiffs' punitive damages claim against Peele; (7) DENIED as to Peele's trespass to chattel claim against the Estate of Arrington; and (8) DENIED as to Peele's conversion claim against the Estate of Arrington.

SO ORDERED, this 24 day of January 2009.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE